**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| HARDWARE RESOURCES, INC. | CIVIL ACTION NO. 07-1875 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| LAMA D. D., ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss (Record Document 14) filed by defendants Titus International PLC ("Titus PLC") and Titus Tool Company, Inc. ("Titus Tool"). Pursuant to Federal Rule of Civil Procedure 12(b), Titus PLC and Titus Tool seek dismissal of the complaint against them on the grounds that they are not subject to personal jurisdiction in Louisiana. See id. Alternatively, pursuant to 28 U.S.C. § 1404, Titus PLC and Titus Tool move for the transfer of this action to the United States District Court for the Southern District of New York. See id. Plaintiff Hardware Resources, Inc. ("Hardware Resources") opposed the motion. See Record Document 31. For the reasons which follow, the motion is **DENIED** in all respects.

**I.    BACKGROUND.**

Hardware Resources, a Louisiana corporation with its principal place of business in Bossier City, Louisiana, filed a First Amended and Supplemental Complaint for Damages on December 7, 2007. See Record Document 2. Hardware Resources is engaged in the business of manufacturing and selling functional and decorative furniture hardware. See id. at 2.

The named defendants in the complaint are Lama, d.d. ("Lama"), a Slovenian corporation with its primary place of business in Dekani, Slovenia; Titus PLC, a United

Kingdom corporation and the sole owner and shareholder of Lama; and Titus Tool, an Arizona corporation with its principal place of business in Kent, Washington and a wholly owned subsidiary of Titus PLC. See id. at 1. Hardware Resources alleged:

> Lama, Titus [PLC] and Titus Tool conduct business throughout the United States . . . and the State of Louisiana and have sufficient contacts with the State of Louisiana to warrant the exercise of general and specific jurisdiction by this Court.

Id. at 2.

The First Amended and Supplemental Complaint for Damages alleges a breach of contract claim against Lama arising out of a Marketing Agreement executed on May 22, 2004 in Bossier City, Louisiana by and between Hardware Resources and Lama. See id. In the Marketing Agreement, Lama committed to 100% loyalty to Hardware Resources and promised to make no other direct sales to the United States market of its hinges other than through Hardware Resources. See id. Hardware Resources alleged that Lama breached the 2004 Marketing Agreement by marketing and selling its hinges directly to customers in the United States through its parent company Titus PLC and Titus Tool. See id. at 3. Lama filed an answer and counterclaim to the First Amended and Supplemental Complaint for Damages, thus acquiescing to the jurisdiction of the Court. See Record Document 23.

Pursuant to the Louisiana Unfair Trade Practices Act, the First Amended and Supplemental Complaint for Damages alleges unfair trade practices against Titus PLC and Titus Tool. See Record Document 2 at 3. Hardware Resources specifically alleged:

> 12. Upon its purchase of Lama, Titus [PLC] and Titus Tool became business competitors of Hardware.
>
> 13. Titus [PLC] exerts control over Lama as its sole owner and shareholder.

> 14. Titus [PLC] has exerted control over Lama and has caused and induced it to breach the [Marketing] Agreement with Hardware [Resources] in an effort to harm the business of Hardware [Resources]. Titus Tool has assisted Titus [PLC] and Lama in their efforts to breach the [Marketing] Agreement and harm the business of Hardware [Resources].

Id. Titus PLC and Titus Tool have filed the instant Motion to Dismiss in lieu of their answer. See Record Document 14.[1]

## II. LAW AND ANALYSIS.

### A. Personal Jurisdiction.

#### 1. Legal Standard.

A district court sitting in diversity[2] may exercise personal jurisdiction over defendants if the Louisiana long-arm statute confers personal jurisdiction over them and the exercise of personal jurisdiction comports with due process under the United States Constitution. See Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir.1999). The Louisiana long-arm statute extends to the limits of due process. See Alpine View Co. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir.2000). The Fifth Circuit has therefore collapsed the usual two-step inquiry into a single question: whether the exercise of personal jurisdiction over the defendants is permissible under the Due Process Clause of the Fourteenth Amendment.

---

[1] After the filing of the instant motion, Hardware Resources filed a Motion to Continue to Allow Jurisdictional Discovery. See Record Document 17. The Court granted the motion, permitting Hardware Resources to conduct limited jurisdictional discovery, specifically restricted to the nature and frequency of Titus PLC's and Titus Tool's business transactions in Louisiana, as well as the corporate relationship between the defendants. See Record Document 30.

[2] As this case is before this Court on diversity of citizenship subject matter jurisdiction, this Court, under Erie, is bound to apply Louisiana substantive law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

See id. The Due Process Clause permits exercising personal jurisdiction over a nonresident defendant if: (1) the defendant has purposefully availed himself of the protections and benefits of the forum state by establishing "minimum contacts" with that state, and (2) the exercise of jurisdiction comports with "fair play and substantial justice." See id. at 214-15. These minimum contacts may be established through contacts sufficient to support "specific jurisdiction," or contacts so systematic and continuous as to support "general jurisdiction" over the defendant. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 105 S.Ct. 2174 (1985); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868 (1984). "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action." Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir.1999).

On a pretrial motion such as this one where no evidentiary hearing is held, the uncontroverted allegations in the plaintiff's complaint must be taken as true and any conflicts between facts contained in the parties' affidavits must be resolved in the plaintiff's favor. Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir.1990). Those facts must create for the plaintiff a *prima facie* showing of jurisdiction. Travelers Indemnity Co. v. Calvert Fire Ins. Co., 798 F.2d 826, 831 (5th Cir.1986). If the plaintiff satisfies that minimal standard, he must still prove the jurisdictional facts at trial or through hearing by a preponderance of the evidence before he may obtain relief on the merits against the non-resident. Id.; Felch v. Transportes Lar-Mex, 92 F.3d 320, 326 (5th Cir.1996).

**2. Parties' Arguments.**

Titus PLC and Titus Tool argued that they have "insufficient presence in Louisiana to warrant the exercise of general jurisdiction." Record Document 14-2 at 8. Specifically,

they noted that they have no offices in Louisiana; have no bank accounts or other real property in Louisiana; and have no employees in Louisiana. See id. Titus PLC and Titus Tool further observed that the only contact they have with Louisiana is Titus US's shipments and occasional business trips to its two distributors in Louisiana. See id.

Hardware Resources argued that Titus Tool has "continuous and systematic" contacts with Louisiana sufficient to warrant the exercise of general personal jurisdiction by virtue of the following facts: Hardware Resources was Titus Tool's largest purchaser of Lama products in the Southeast, an area which covered Texas to Florida and up to Virginia; from April 2006 through October 2007, Titus Tool sold $1.59 million worth of Lama hinges to Hardware Resources alone, with a majority of these products being shipped to Hardware Resources' Bossier City location; and from April 2006 through October 2007, Titus Tool's Dallas, Texas based sales manager made several trips to Hardware Resources' headquarters in Bossier City, Louisiana. See Record Document 31 at 18-19. Hardware Resources maintains that "[i]t is an undisputed fact that Titus Tool has transacted business in [Louisiana], visited potential customers in [Louisiana], and generated a significant percentage of its national sales through revenue generated from in-state [Louisiana] customers." Id. at 19.

In reply, Titus Tool noted that it has no offices, bank accounts, real property or employees in Louisiana. See Record Document 32 at 8. It further maintained that any activities in Louisiana relating to sales, travel, and customers were quite limited and do not constitute continuous and systematic contacts sufficient for general jurisdiction. See id. at 8-9.

Titus PLC and Titus Tool likewise argued that they do not meet any of the

requirements for the exercise of specific jurisdiction. See id. at 9. They specifically noted that the only actionable conduct by Titus PLC or Titus US alleged by Hardware Resources is unfair trade practices, namely that "Titus has exerted control over Lama and has caused and induced it to breach the Agreement with Hardware in an effort to harm the business of Hardware. Titus Tool has assisted Titus and Lama in their efforts to breach the Agreement and harm the business of Hardware." Id., citing First Amended and Supplemental Complaint for Damages (Record Document 2) at ¶ 14. Titus PLC and Titus Tool contended that this single cause of action plead by Hardware Resources against them does not arise from their transaction of business in Louisiana. See id.

Conversely, Hardware Resources argued that this Court may assert specific personal jurisdiction over both Titus PLC and Titus Tool on three bases: (1) both Titus PLC and Titus Tool have claimed to be a party in interest to the 2004 Marketing Agreement, thus establishing sufficient minimum contacts with the forum to exercise specific personal jurisdiction; (2) the contacts of Lama arising out of the 2004 Marketing Agreement can be imputed to Titus PLC and Titus Tool under the single business enterprise doctrine, as Titus PLC, Titus Tool, and Lama have functioned, and continue to function, as a single business enterprise, with each company acting as the agent, instrumentality, or alter ego of one another; and (3) Titus PLC and Titus Tool are subject to the specific jurisdiction of this Court based upon the unfair trade practices claim. See Record Document 31 at 8.

In reply, Titus PLC and Titus Tool argued that "Titus PLC is not subject to [personal] jurisdiction in Louisiana simply because, after having acquired a majority interest in Lama, it is a party in interest to Lama's claims arising from Hardware Resources' breach of the 2004 Marketing Agreement." Record Document 32 at 1. They further contended that

"since Titus PLC and Lama have not merged, Titus PLC is not subject to [personal] jurisdiction in Louisiana based on Lama's activities." Id. at 2. Likewise, with respect to Titus Tool, they argue that there has been no merger between Lama and Titus Tool; that each continues to operate as independent companies; and that Titus Tool did not become a party in interest to the 2004 Marketing Agreement. See id. at 3-4. Simply put, Titus PLC and Titus Tool argued that Lama's contacts with Louisiana do not provide a basis to exercise personal jurisdiction over either of them. See id. at 4.

Titus PLC and Titus Tool further argued that they are not the alter egos of Lama. See id. Specifically, they asserted:

> For Lama's contacts with Louisiana to inure to Titus PLC and Titus [Tool] for jurisdictional purposes, Hardware Resources would have had to, but did not establish that Titus PLC and Titus [Tool] have pervasive control by the parent over the internal business operations and affairs of the subsidiary.

Id. at 5, citing Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1162 (5th Cir. 1983). Titus PLC and Titus Tool maintained there is insufficient evidence to conclude that either of them have an significant control over the internal business operations, affairs, or day-to-day operations of Lama, much less control at a level that would justify finding that they are the alter egos of Lama. See id. at 6.

### 3. Analysis.

Here, the Court will not analyze general jurisdiction, as the Court finds that specific jurisdiction exists because Titus PLC's and Titus Tool's contacts with Louisiana arise from, or are directly related to, the causes of action set forth in the First Amended and Supplemental Complaint for Damages, specifically breach of contract and unfair trade practices. As to the breach of contract claim relating to the 2004 Marketing Agreement,

Hardware Resources noted that Titus PLC affirmatively pled to be a party in interest to the 2004 Marketing Agreement in a parallel lawsuit in the Federal District Court for the Southern District of New York wherein Titus PLC alleged that Hardware Resources had breached the very same 2004 Marketing Agreement at issue in this case. See Record Document 31, Exhibit B. Likewise, Hardware Resources argued that since the acquisition of Lama by Titus PLC in early 2006, Titus Tool has both implicitly and explicitly made itself a party in interest to the contract. For example, Walter Zabriskie ("Zabriskie"), President of Titus Tool, notified Hardware Resources that all future orders of Lama products and all contact, including payment remittance, regarding Lama products would be through Titus Tool as a result of the "Titus.LamaTM merger." See id., Exhibit C (Deposition of Zabriskie at 37); Exhibit D.

Relying on Fifth Circuit jurisprudence analyzing the single business enterprise theory, Hardware Resources argued that the parent companies of Titus PLC and Titus Tool are amenable to personal jurisdiction because of the acts of Lama, a subsidiary. The Court agrees. A district court may exercise jurisdiction over an out-of-state corporation under the single business enterprise doctrine when a subsidiary of the out-of-state corporation is subject to the court's jurisdiction. See Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 428 (5th Cir. 2005). Under this doctrine, the court considers the substance of the corporate structure over its form. See Green v. Champion Ins. Co., 577 So.2d 249 (La.App. 1st Cir. 1991). In Hargrave v. Fibreboard Corp., 710 F.2d 1154 (5th Cir.1983), the 5th Circuit set forth certain factors to be weighed in determining whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary. See id. at 1159. The Hargrave factors include: (1) the amount of stock owned

by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether the two corporations have common officers and directors; (4) whether the two corporations observe corporate formalities; (5) whether the two corporations maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the parent exercises complete authority over daily operations. See id. at 1160. Other factors mentioned by the Hargrave court included: (8) the method and degree of financing of the subsidiary by the parent; (9) extent to which contracts between parent and subsidiary favor one over the other; (10) connection of parent's employee, officer or director to subsidiary's tort or contract giving rise to suit; and (11) formal barriers between management of the two entities are erected, with each functioning in its own best interests; and (12) those with whom the corporations come in contact are apprised of their separate identity. See id.

Considering these factors, the Court concludes that Titus PLC, Titus Tool, and Lama may be fused for jurisdictional purposes. First, the record indicates that Titus Tool and Lama are wholly owned subsidiaries of Titus PLC and that the three entities share common officers and directors, with the officers and directors of Titus Tool and Lama being appointed by Titus PLC. See Record Document 31, Exhibit C at 7-18; Exhibits H & I. While Titus PLC does not manufacture, sell, or distribute any of its own products and appears to be a holding company, the record at this stage indicates that it has authority over general policy and sets the broad strategic direction for all of the subsidiaries. See id., Exhibit C at 25. Titus PLC also appears to have authority over daily operations, as it sets general guidelines with respect to inter-company policies, such as the requirement that all Titus International subsidiaries transfer products at cost between one another. See

id., Exhibit C at 56-57. Titus PLC has also guaranteed a substantial loan made to Titus Tool and received no consideration, financial or otherwise, for the guarantee. See id., Exhibit C at 76. Titus companies also receive favorable contract rates for products exchanged between them. See id., Exhibit C at 57-58. Finally, Titus Tool's employees, officers and directors are connected to the breach of contract claim against Lama. According to Hardware Resources, Titus Tool became intricately involved in the relationship between Hardware Resources and Lama following the acquisition of Lama by Titus PLC in 2006. Specifically, Hardware Resources asserted in the First Amended and Supplemental Complaint for Damages that Lama's marketing, sale, and/or distribution of Lama products through its sister company, Titus Tool, constituted a direct sale to the U.S. market in violation of the terms of the 2004 Marketing Agreement, thereby making the acts of Titus Tool central to this litigation. These factors as a whole weigh in favor of imputing Lama's contacts with the forum to Titus PLC and Titus Tool for jurisdictional purposes. Again, the Court must resolve any conflicts between the facts in the plaintiff's favor; thus, the Court finds that Titus PLC, Titus Tool, and Lama have functioned, and continue to function, as a single business enterprise, with each company acting as the agent, instrumentality, or alter ego of one another.

The Court finds that Titus PLC's and Titus Tool's status as parties in interest to the 2004 Marketing Agreement coupled with the fusing of Titus PLC, Titus Tool, and Lama pursuant to the single business enterprise doctrine are sufficient to warrant the exercise of specific personal jurisdiction over Titus PLC and Titus Tool by this Court. In addition, the Court also analyzed the unfair trade practices claims asserted against Titus PLC and Titus Tool for jurisdictional purposes. Hardware Resources has presented evidence that

Zabriskie was aware of the 100% loyalty provision in the 2004 Marketing Agreement when Lama was acquired by Titus PLC. See Record Document 31, Exhibit C at 34. However, according to Hardware Resources, subsequent to Titus PLC's acquisition of Lama in early 2006, Titus PLC and Titus Tool induced or caused Lama to breach the 2004 Marketing Agreement through the marketing, selling, and/or distribution of Lama products directly to the U.S. market through distributors and consumers other than Hardware Resources. One such distributor was Southern Saw and Cutter, Inc., whose principal place of business is located in Harahan, Louisiana. See id., Exhibit C at 53. At this stage, where the Court must resolve factual conflicts in favor of Hardware Resources, it appears that both Titus PLC and Titus Tool were aware that a contract containing a loyalty provision existed between Hardware Resources and Lama. See Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990) ("Moreover, on a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists."). It further appears that prior to the acquisition, Hardware Resources, a Louisiana-based company, annually purchased millions of dollars worth of Lama products. Thus, at a minimum, Titus PLC and Titus Tool should have been aware that their actions had, and would continue to have, a direct and foreseeable impact on the commerce of the state of Louisiana sufficient to warrant the exercise of specific personal jurisdiction by this Court.[3]

---

[3] In light of the admission of Zabriskie regarding the existence of distributor Southern Saw and Cutter, Inc., a Louisiana corporation with its principal place of business in Harahan, Louisiana, the Court is simply unpersuaded by Titus PLC's and Titus Tool's argument that the conduct purportedly constituting unfair trade practices did not occur in

B.  **Venue.**

Alternatively, Titus PLC and Titus Tool have moved for a transfer of venue pursuant to Title 28, United States Code, Section 1404(a). Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The Court need not reach the Section 1404(a) analysis, as District Judge William H. Pauley, III of the United States District Court for the Southern District of New York dismissed the New York action on July 18, 2008 pursuant to New York's "First to File" Rule. See Record Document 1-2. Thus, Titus PLC's and Titus Tool's alternative motion filed pursuant to Section 1404(a) is **DENIED AS MOOT**.

III. **CONCLUSION.**

Based on the foregoing, the Court finds that Titus PLC and Titus Tool are subject to the personal jurisdiction of this Court. Therefore, the Motion to Dismiss or, alternatively, Motion to Transfer Case is **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 30th day of September, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

Louisiana.